ALFRED A. CATLETT et al. *v.* JOHN BACON et al.

1. STATUTE OF FRAUDS: DEED OF TRUST: CONSIDERATION.—A debtor executed a deed of trust, attempting to convey, for the purpose of securing his indebtedness, certain lands owned by his creditor. The trust deed recited, that upon payment of the debt thus secured, the creditor had agreed to convey the land to the debtor. Held, that the deed not having been signed by the creditor, imposed no obligations on him to convey the land upon the payment of the debt, and that the trust deed was therefore void, for want of consideration.

2. A parol agreement for the sale of land, although in part performed by the vendee taking possession thereunder, is within the operation of the Statute of Frauds; and such a contract being null and void, cannot be made the subject of an agreement between the vendee and a third person, so as to vest rights in the vendor. And, therefore, when the grantor, in a deed of trust, made in consideration of a parol agreement, partly performed, of the creditor, to convey

certain land embraced in the deed, to the grantor, upon his payment of the debt thus secured, afterwards conveyed the land to another, in consideration of his promise to pay the debt; it was held, that such promise of a third party was void, for want of consideration, and could not be enforced.

3. CHANCERY: PARTIES.—The assignee of a creditor, whose debt was secured by a deed of trust, which bound the creditor to convey certain land, embraced in the deed, to the debtor, cannot maintain his bill in equity to foreclose the deed of trust, and enforce the collection of the debt, without procuring the title to the land to be conveyed, as required in the trust deed; and in such a case, it will be essential to make the person holding the legal title, a party to the bill.

APPEAL from the Superior Court of Chancery. Hon. Charles Scott, chancellor.

In April, A. D. 1849, John Bacon et al. filed their bill in the Superior Court of Chancery, against A. A. Catlett and his wife Rachel, A. M. Fonte, and Richard P. Winslow, and also against Galbraith and Cooper, statutory trustees of the Planters' Bank.

From the bill and exhibits thereto, it appears, that on the 30th day of May, A.D. 1841, A. A. Catlett executed his five promissory notes to the Planters' Bank, for $1294 48 each, falling due respectively, in one, two, three, four, and five years, from that date; that the Bank, on the third Monday of April, A. D. 1841, purchased, at a sheriff's sale, under an execution against Catlett, certain lands, then belonging to him, and thus acquired, as the bill alleges, "the absolute title to the same;" that soon afterwards, the bill alleges, it was agreed between Catlett and wife, and the Planters' Bank, that said Catlett and wife should convey said land, including her dower, in trust, to pay said notes, and on payment thereof, that the Bank should reconvey to them. On the 30th May, A. D. 1841, Catlett and wife executed a deed of trust to Richards, to secure the payment of the notes. This deed, which is made an exhibit to the bill, is in form a tripartite agreement, in which Catlett and wife are named as the parties of the first part; Richards, the trustee, as the party of the second part; and the Bank, as the party of the third part; but it was never signed or executed by any of the parties, except Catlett and wife. The deed recites an agreement, that the Bank, upon the payment of all the notes, should reconvey the land to Catlett and wife.

It is also alleged in the bill, that on the 23d day of June, A. D.

1842, Catlett and wife conveyed the land to the defendant Winslow, in consideration of his promise and agreement, made to said Catlett and wife, to pay the notes secured by the deed of trust ; and that, on the 4th of November, 1842, Winslow conveyed a part of the land to the defendant, A. M. Fonte, in consideration of $2500 in cash, then paid by Fonte to Winslow, and for the further consideration of Fonte's promise to Winslow, to pay and discharge the notes aforesaid, and that Winslow and Fonte took possession of the lands under these conveyances, and still hold the same; that in July, 1842, the Planters' Bank transferred the notes to the complainants, by delivery, and at the same time made a legal assignment of all its interest in the deed of trust, to them ; that the said Bank has been dissolved by a judgment rendered against it, in a proceeding in the nature of a writ of quo warranto ; that Richards, the trustee, is dead, and that the notes are still due and unpaid.

The bill further charges, that Fonte and Winslow, by their aforesaid agreement, are liable to pay any balance that may remain due on the notes, after applying thereto the proceeds of the sale of the land, and prays for a sale of the land, and for a decree against Fonte and Winslow, for any balance remaining due.

Winslow and Fonte answered the bill, and in their answer claimed the benefit of a demurrer.

The chancellor on final hearing overruled the demurrer, and decreed for the complainants substantially as prayed for, from which decree this appeal was taken.

*D. Shelton,* for appellants.

The position which I shall attempt to sustain on the demurrer may be thus stated in the alternative.

At the time of the forfeiture of the Planters' Bank charter, either the absolute estate was in the Bank, and by forfeiture went to the trustees, Galbraith and Cooper, and so these complainants have against said lands no rights to enforce ; or, the interest remaining in the Bank was equivalent to a title in fee simple in her, with an agreement by her to convey to Catlett on payment of the five notes sued on ; and on this alternative Galbraith and Cooper do not, as trustees, hold the title or any other interest in the land ; but to sustain the bill, the Bank or some other party, who by the

forfeiture took the fee, must be made a party, with proper allegations of title by such forfeiture.

If I make good either alternative of this proposition the demurrer must be sustained. One or the other I think must inevitably be true; for if the former be not true the latter must, as I conceive, be so as a consequence.

I believe the first alternative of the proposition to be true. Under judgment liens, existing from 16th October, 1838, and at execution sale made 19th April, 1841, the Planters' Bank bought the land absolutely and unconditionally. The bill expressly charges that by this purchase "the absolue title was vested in said President, Directors, and Company of the Planters' Bank of the State of Mississippi."

The next act shown by the bill is the execution of a deed of trust (Ex. G), from Catlett to W. C. Richards, as trustee, conveying the same lands in trust, to secure to the Planters' Bank the five notes sued on; this deed of trust purports to be an indenture, made and entered into May 20th, 1841 (a month after said purchase), by and between Catlett and wife of the first part, W. C. Richards of the second part, and the Planters' Bank of the third part. Its attestation is: "In testimony whereof, said parties have hereunto set their hands and affixed their seals, the day and year first above written." Signed thus,

A. A. CATLETT,    [SEAL.]
R. M. CATLETT,    [SEAL.]
[SEAL.]

On the 30th June, 1842, the President of the Planters' Bank, in writing, pretends to assign to complainants "all the right, title, and interest of the Planters' Bank, in and to said deed of trust, to hold the same free from all claims claiming under the Planters' Bank."

Above is the complainant's whole pretence of claim to the bond. The question upon it is, What interest in the land, what incumbrance upon it, was conveyed by the Bank's assignment of the deed of trust? The answer to that question depends upon the solution of another, to wit, what right, title, or interest in the land had Catlett at the time he made that deed of trust? for, if he had none, he of course conveyed none to the trustee, Richards, and,

consequently, there being no property subjected to the trust, there was no trust to be executed.

Now, the bill alleges that at the time Catlett executed said Exhibit G, he had no right or title to the property; but the Planters'. Bank, by her purchase at execution sale, made a month previously, was vested with absolute title to the property. How, therefore, could Catlett, who held no interest, convey an interest to Richards as trustee, or how could the Bank acquire an interest, legal or equitable, from one who had neither? Or how could the Bank, by assigning her interest in a deed of trust, which conveyed no interest itself, vest in her assignee an interest under and by virtue of said deed of trust, when she herself had no interest, legal or equitable, held under or by virtue of such deed of trust? Complainants must show that when Catlett made this deed of trust he had some legal or equitable interest in the land, before they can claim an interest under that deed; this, so far from showing, the complainants have flatly negatived, by charging that the absolute estate was in the Bank.

Unless, therefore, Exhibit G be something more than a mere deed of trust, complainants have no right to, or interest in, or incumbrance upon this land.

But, it is said, that there is a stipulation in the deed of trust, " that it is expressly agreed between said parties that, on payment of said notes, the Bank shall convey her title to Catlett."

I reply, that upon this stipulation, the Bank cannot be charged for the purpose of divesting her title acquired by her purchase at execution sale.

Said pretended deed of trust was never signed by any person except Catlett and wife; the Bank never came under any written obligation to convey her title previously acquired, on payment of the notes. The whole deed of trust, including the above stipulation, is the obligation of Catlett only, not the written obligation of the Bank or its agent. Nay, it is apparent on the face of the deed that the Bank refused to come under such written obligation. It is a tripartite deed, yet signed by one party only. Its attestation is that all the parties have signed and sealed, yet only one has signed or sealed. The seals were attached for all the parties, yet only one signed. If any inference is to be drawn from these things

it is that the Bank refused to come under a written obligation to convey. Now although it may be true, that to a mere deed of trust there was no necessity for the Bank's signing, that is true only, because under no contingency, could the Bank be sought to be charged upon such an instrument; by it she would contract no obligations relative to the land. But said stipulation makes this instrument more than a mere deed of trust to secure the Bank; it purports to bind the Bank to convey the absolute estate which she held previously. Such an obligation cannot exist, unless it be in writing, and signed by the Bank or its authorized agent. "No party shall be charged upon any contract for the sale of lands, unless upon an agreement or some memorandum thereof in writing, signed by the party sought to be charged, or by some person authorized by him." Hutch. Co. 637.

The English and American innovations upon this statute, have been founded on a single principle, to wit, that the act set up in avoidance of the statute, would operate as a fraud, unless the agreement be executed. 3 Paige R. 345; 14 John. R. 15.

No such principle applies in the present case. If the Bank does not perform her contract, both Catlett and the Bank will be situated precisely as they would have been if no such pretended agreement had ever been made; for be it remembered, that these notes of Catlett's were not given for the purchase of the land, but for a pre-existing debt.

But, even as to these cases of fraud, our courts have discarded them as innovations upon the statute, founded on very good reasons, if there were no prohibitory statute, but which, say they, cannot prevail over a direct statutory prohibition. See on the Statute of Limitations, 12 S. & M. 665; 13 Ib. 511. See on the Statute of Frauds, 9 S. & M. 210; 13 Ib. 93.

By these cases it is settled, that in this State the courts will not engraft exceptions not contained in the prohibitory act, but follow the terms of the statutes, and adhere closely to their provisions. Under such a construction, the title acquired by the Bank, under her purchase at execution sale, cannot be divested by charging upon her the stipulations contained in the deed of trust. And if this be true, then it follows, that up to the date of the forfeiture of her charter, the Bank held the same title, which she held before

said pretended deed of trust was made by Catlett, to wit (in the language of the bill), the absolute title in fee; and consequently Galbraith and Cooper, the trustees, by the forfeiture took the right and title to the property, and complainants have neither a right to it, an interest in it, nor an incumbrance upon it, by the assignment of said deed of trust, and therefore their bill must be dismissed.

But there is still another reason why that stipulation in no way binds the Bank; if the statements of the bill be true, it was without consideration and a mere *nudum pactum.* According to the statements of the bill, the transaction was simply this: the Bank owned the property absolutely; Catlett owed her a large debt, subsequently to become due, and the Bank stipulated, that if Catlett would pay that debt, when or after the same became due, she would convey him the land. By this agreement, Catlett gave nothing for the alleged stipulation; he only promised, or rather he did not even promise to do, what he had already obligated himself to do by law, and upon another consideration previously received, and yet this *nudum pactum* is sought to be executed, for the purpose of divesting title to land without any written undertaking, signed by the party sought to be charged therewith. Such an agreement a court of chancery will not lend its aid to enforce. 4 Paige R. 305.

But suppose I am wrong, and I were now to admit that the Bank is bound by the stipulation in said deed of trust, and bound to execute it. I should then be equally confident that the demurrer must be sustained. The true character of the transaction, would then be neither more nor less than this. The Bank owned the property absolutely, but without conveying any title or estate therein to Catlett, agreed to convey to him when he should pay the five notes. These notes and the benefit of that contract were transferred to complainants, who as assignees, bring this bill to coerce Catlett to pay the money, or have the property sold to pay it. It is neither more nor less than a bill, by the assignees of a vendor, for specific performance of an executory contract of sale. 2 S. & M. 590; 4 Ib. 294.

Such a bill may be sustained by the assignee, but it cannot be sustained without making the vendor plaintiff or defendant. 4 S. & M. 294; 6 John. Ch. R. 409.

This must be true upon principle : without the vendor's being a party the contract cannot be executed.   It would be no execution of the contract to coerce from the purchaser, the payment of the money, and yet fail to procure him the title.   Such a contract must be executed *in toto* or not at all.   Neither the vendor nor his assignee, can demand from the court a decree for the payment of the money, until they show their readiness and ability to pass the title according to the agreement.

To apply these principles to this case.   How, I ask, can the complainants have the Bank's contract executed in this case ?   When we have paid our money and demanded title, by what means will the complainants have it conveyed to us ?   You cannot make a decree that the Planters' Bank shall convey, for two reasons : she is no party to the suit ; there is no such person as the Planters' Bank.   You cannot divest the Planters' Bank title (wherever it now rests), by a decree against Galbraith and Cooper, the trustees, for these are trustees, only for the purpose of collecting such debts and disposing of such property as belonged to the Bank at the time of its dissolution ; for the purpose of paying the debts of the Bank.   10 S. & M. 428 ; 12 Ib. 482, 524.

This land, after the assignment to complainants, being subject to no such trust, Galbraith and Cooper are not and never were, as to this land, the legal representatives of said Bank ; as to this land, they took nothing by their appointment as trustees.

The question remains unanswered.   By what means can the complainants have title conveyed to us, when we have paid our money ?   Can a commissioner by decree of the court convey it ? Whose title ? and in whose name will he convey title ? He may represent to the full extent every party to this suit, and yet he will convey no title, because neither one nor all of the parties put together have the title.   That title was outstanding in the Planters' Bank at the time of her forfeiture, and complainants must devise a mode of making that Bank or the person, who by the forfeiture took the title, a party defendant or complainant, before a title can be conveyed to us. It is for them to devise the mode, not us ; they must show their readiness and ability to have the contract executed by the Bank, before they can demand our money.   I believe there is no mode under heaven whereby it can be done ; but if complain-

ants think otherwise, it is for them to make the necessary parties, with proper allegations, so that when the court requires us to pay the money, it shall also decree conveyance of title, and that said title is a good and valid title to us. These covenants are dependent, and the debtor cannot be forced to pay, until the creditor is ready and able, to have a good title made. This is the rule even at law, and the inability to make title is a good defence at law even without eviction. *Feemster* v. *May*, 13 S. & M. 275; Ib. 532, 677.

How much more strongly does this principle apply, where the vendor comes into a court of equity for relief, upon an executory contract. That court always requires the complainant in such cases, to show his readiness and ability to perform or have performed his part of the agreement, before it will give him relief against the other party. 9 S. & M. 244; 7 Ib. 768; 2 Wheat. 336; 12 Ves. Jr. 425.

The force of this argument and the strength of the position I have taken, may be forcibly illustrated by this case. Suppose that the defendants were now to come forward and pay these notes, who could they apply to for title, or against whom could they file a bill for title? Again, suppose upon Winslow's obligation to pay these notes, the court shall decree that he must be prosecuted to insolvency, before this land, now owned by sub-purchasers, can be sold; and upon that decree, the money was coerced out of Winslow, against whom would he file his bill for title? I answer, that because he could not sue the Bank, he could never get the title; nor could he get it by making Galbraith and Cooper parties, for they are not trustees of this property; nor by making complainants parties, for they have not the title. Is there any person against whom he could bring suit and procure the title? I think not; but if it be otherwise, that person should be made a party to this suit, so that the court may, by its adjudication, determine our title to be a good one, at the same time that it coerces us to pay the money; that the contract must be executed *in toto*, or not enforced at all; that it cannot be enforced against one party, while it leaves that party without a remedy, or with a very doubtful remedy, against the other; that he who asks of this court a specific performance of an executory contract, must come forward ready and able to

have that contract fully executed; that he shall not have the benefit of defendant's obligations, until he is ready and able to perform his own.

*George L. Potter*, and *J. F. Fonte*, on same side,
Filed elaborate briefs.

*George S. Yerger*, for appellees.
The great objection in this case is, that the agreement or mortgage is not signed by the Planters' Bank. The agreement is, that Catlett and wife agree to pay the notes, &c., and that upon payment thereof, the land shall be conveyed to Catlett.

The argument is, that the title purchased by the Bank is still in her; that she is no party to this arrangement; and that if these parties pay the notes, they will not get the title, which Catlett sold to Winslow, and Winslow sold to Fonte.

Suppose this is true, they have not filed a bill or cross-bill to rescind the contract for want of title. They are in possession under Catlett, and agreed to pay him. That is, agreed to pay this debt. And they cannot avoid paying it, without eviction.

But a complete answer is this: if Catlett had no title, and if the same was outstanding, still Catlett sold to Winslow, and Winslow expressly promised to pay this debt for him. Again, Winslow sold to Fonte, and Fonte expressly agreed to pay this debt, as the deed shows. Now, Fonte went into possession under this contract, agreed to pay the debt, and agreed that the land should be held subject to the deed made by Catlett and wife. He afterwards bought in the title at sheriff's sale, under an older judgment than the Planters' Bank judgment. Then Fonte, according to his own showing, holds the absolute title to the land. This being so, he must now perform his contract. He holds it as trustee, and all he can claim is the amount he paid for it, to be deducted from the debt he assumed to pay. *Meadow* v. *Hopkins*, Meigs's Rep. 185, in point; *Hardeman* v. *Cowan*, 10 S. & M. 487; *Ayres* v. *Mitchell*, 3 Ib. 694; *Galloway* v. *Finley*, 12 Peters, 295.

The property is then held by him, coupled with a trust, to pay Catlett's debt to the Planters' Bank. It is held in trust, that is, the title bought in, is held in trust for that purpose.

Catlett et al. *v.* Bacon et al.

But it is objected that Fonte did not promise the Planters' Bank to pay it, but that the promise was made to Catlett to pay the Planters' Bank debt. That there is no priority, and the Planters' Bank could not maintain an action on the promise.

Even at law, the better authorities are, that a promise on good consideration to A. to pay a debt A. owes to C., that C. may maintain the action. *Fleming* v. *Alter*, 7 Serg. & Rawle, 295; *Arnold* v. *Lyman*, 17 Mass. Rep. 400; *Schemerhorn* v. *Vander-heyden*, 1 John. R. 139; *Weston* v. *Barker*, 12 John. R. 276; *Harper* v. *Ragan*, 2 Blackf. 30; Walker, 312.

The case in 17 Mass. 400, is precisely in point in all particulars. Fraud against creditors was there alleged also. But if there was any doubt at law, there is none in equity. In Pennsylvania and Massachusetts they had no courts of equity, and the decisions in these States are conclusive. In equity the rule is, that the party who is ultimately entitled to the money, may proceed in equity for it.

Fonte, to avoid his liability, should have delivered back possession, or offered it, and rescinded the contract. *Gale* v. *Nixon*, 6 Conn. Rep. 445. In the latter case the court says : " They do not offer to deliver possession back and rescind the contract, but seek to retain the land, and avoid paying the stipulated price." This cannot be conscientiously done. It would be a fraud upon Catlett as well as the complainants.

Fonte was put in possession by Catlett. He holds it under his title. He bought in an outstanding title, which now gives him undisputed title to the land. · Can he now repudiate his purchase from Catlett or Winslow? Surely not. All he can ask, as settled by this court and all other courts, is his money for the elder title he purchased in, and interest.

As to the fraudulent representations spoken of in the answer, and the fraud on the Bankrupt Law, there is no proof; but if proved, how can they avail Fonte? He is no creditor. He purchased in a title, which being vendee, perfected the title in himself. There are no creditors complaining.

But admit everything he alleges to be true, the fraud would only be a ground to let him off from his contract. He cannot allege a fraud on himself and hold to the property without paying

for it. If there is fraud he may rescind the contract, and he must surrender back to us the property and title he got by his purchase under the older execution upon our paying him for it.

Here is a case where a party purchases, takes possession, buys in an outstanding title whilst in possession, and then asks for relief on the ground of fraud, and that not a fraud on him, but on third persons, without delivering up possession. But in fact no fraud is proved.

HANDY, J., delivered the opinion of the court.

The bill in this case shows, that on the 20th May, 1841, Catlett executed to the Planters' Bank of Mississippi five promissory notes, for $1294 48 each, payable in five annual instalments, and that on the 19th April, 1841, the Bank had purchased, at execution sale, certain lands of Catlett, and had received a sheriff's deed for the same, by which the absolute title was conveyed to her, and on the 30th May, 1841, in pursuance of an agreement entered into between the parties, Catlett and his wife executed a deed to a trustee, conveying the same lands in trust for the payment of the notes, the deed containing a stipulation that the Bank should convey to Catlett and wife, or their assigns, the title to the lands acquired by the Bank under the sheriff's deed, upon the satisfaction of the debt due by Catlett to the Bank. This deed was signed and executed by Catlett and wife, but not by either the trustee or the Bank. It is further alleged, that in June, 1842, Catlett and wife conveyed the lands to Winslow, in consideration of his agreement to pay the notes mentioned in the deed of trust and other debts, and that in November, 1842, Winslow conveyed a part of the lands to A. M. Fonte, upon the consideration of $2500 paid in cash, and that Fonte should release and discharge the deed of trust; that the notes were transferred by delivery, by the Bank to the complainants, in June 1842, and that the deed in trust, was duly transferred to them at the same time; that the Bank has been dissolved by judgment of law, and the trustee is dead, and that Winslow and Fonte are in possession of the land.

The bill seeks to hold Fonte and Winslow liable, under the agreements stated in the deeds to them, for the payment of the notes mentioned in the deed of trust, and prays a decree for a sale under

that deed, and that Fonte and Winslow be decreed to pay the balance of the debt unpaid by the proceeds of such sale.

Winslow and Fonte answered the allegations of the bill, and demurred to the relief prayed; and upon the final hearing, a decree was made against Fonte in conformity to the prayer of the bill; from which decree this appeal is prosecuted by him.

We consider it necessary to examine the case only with respect to the demurrer.

Conceding that, by the terms of the deed executed by Winslow to Fonte, the latter became bound to pay the notes of Catlett mentioned in the trust deed, he must be placed in the same position as Catlett, and entitled to all the rights·which he had, growing out of the transaction with the Bank, as stated in the bill. We have, then, to inquire into the character and legal force of the obligation of Catlett, arising from the deed of trust, to the Bank, as shown by the bill.

It appears by the bill that, when the deed of trust was executed by Catlett to the Bank, the Bank held "the absolute title to the lands" embraced in the deed. The facts stated show that Catlett had not the shadow of a title when he executed the deed, and nothing is shown to explain how it was that the Bank took the deed from him. No right or benefit, therefore, passed from the Bank to him by virtue of the deed, although the land was conveyed by his deed to Winslow, and subsequently to Fonte, except the agreement inserted in the deed, that the Bank would convey to.him upon his paying the notes mentioned in the deed. But it appears that the deed was *never signed* or *executed* by the Bank; and it is clear that, under the Statute of Frauds, neither Catlett nor those claiming under him could have compelled the Bank to execute that agreement.

Then it is plain that Catlett acquired nothing by the transaction. The Bank had the absolute title and retained it, without any valid agreement for the benefit of Catlett which could be enforced by law. He had no title, either legal or equitable, which passed by the trust deed for the benefit of the Bank, and by the assignment of that deed by the Bank to the complainants, and nothing which passed by his conveyance to Winslow; and, consequently, the undertakings of Winslow and Fonte, to discharge the deed of trust,

were without consideration. If they had paid the debts mentioned in the deed of trust they had no claim, as Catlett had none, to compel the Bank to convey the title to them. And, for aught that appears in the bill, the title remained in the Bank in point of legal right as completely as if the trust deed had never been made.

It follows from this, 1st, that the trust deed is invalid as to Catlett for want of consideration, and hence that the assumpsit of Fonte, predicated upon it, is void; and, 2d, that no title passed to the Bank under it which was the subject of assignment to the complainants.

It is no answer to this to say, that Catlett took possession under the agreement. That is not alleged in the bill, and it does not appear but that he had possession before and at the date of the trust deed. But suppose he took possession under the agreement, the case would occupy no better position in behalf of the complainants' claim, than if the Bank had filed a bill for specific performance against the defendants; and indeed that appears to be the substantial character of the suit. It would present a case of part performance of a vendor's parol contract for the sale of lands, by the vendee taking possession; and it is fully settled in this court, that such a contract cannot be enforced.

But if the Bank was under any obligation to convey the title, such a conveyance was never made by her, and it can never be made, because the corporation has been dissolved. The complainants are incapable of making the conveyance, because they have not the legal title, and they do not offer to make the conveyance. Nor could the court decree a conveyance, because the parties holding the legal title to the lands are not before the court, and their rights could not be foreclosed. But if they were parties, a decree that they should convey, could not be made against them, because the Bank was under no obligation in law to make the conveyance.

We think it manifest that the bill cannot be maintained. The decree is therefore reversed, the demurrer sustained, and the bill dismissed.