JOHN H. HORNE *v.* CHARLES B. HIGGINS.

1. STATUTE OF FRAUDS.   *Deed.   Parol agreement.   Code* 1892, § 4230. '

A verbal agreement upon the execution of a deed that the grantee shall hold the property in trust for the benefit of the grantor, to prevent the latter's improvidence, is within the statute of frauds.

2. CHANCERY PLEADINGS.   *Presumptions.   Demurrer.*

A bill in equity cannot withstand a demurrer because it states facts from which fraud would be presumed if it goes further and negatives the presumption.

FROM the chancery court of Lauderdale county.

HON. NATHAN C. HILL, chancellor.

Charles B. Higgins, the appellee, was the complainant in the court below; Horne, the appellant, was defendant there. Peter Higgins died, leaving a widow and two sons, and property to the value of seventy-five thousand dollars. One son died, his one-third interest descending to his brother, the appellee. The appellee was a wayward boy, and on arriving at majority his mother, because of his unsteady habits, was unwilling to trust large property to his management. He desired five hundred dollars in cash, and, on suggestion of his mother, for this consideration, fifteen days after he became of age, he executed to her a conveyance of his two-thirds undivided interest in the entire estate, it being recognized by both, the bill alleges, that it was executed in order that the mother might manage the property for him. They lived together, and in making sales of parts of the property the appellee was required to join the mother in the conveyances, and the mother invested the pro-

ceeds of sales made in other property, taking title to herself. Afterwards the mother married the appellant, Horne, and in a few months died. Appellee, Higgins, filed his bill seeking cancellation of the conveyance by him to his mother, and further praying the court to declare and adjudge that he, the complainant, was the owner of all the property to the extent of two-thirds interest therein; that all his mother's liabilities be paid out of her one-third interest, and then that the residue of that one-third be divided between himself and the appellant. Horne interposed a demurrer, which was overruled, and he appealed to the supreme court.

*Fewell & Son*, for appellant.

The bill states only two facts to invalidate the deed: (1) That the complainant had only recently come of age, and (2) that the consideration was grossly inadequate. All the other statements of the bill—as to what the complainant and his mother were advised and believed, that the deed was a legal fraud, and as to what everybody understood upon the subject, and as to the subsequent conveyance of the land by Mrs. Higgins (complainant joining in the deeds)—all this is wholly immaterial and irrelevant. The bill manifestly goes upon the ground that complainant had recently come of age when the conveyance was made by him and that the consideration was inadequate; that for these reasons the deed was void. But neither of these reasons rendered the deed void. A deed by a son, recently come of age, to his mother is not void, unless it be procured by fraud or some undue influence. 1 Perry on Trusts, 201; *Jenkins* v. *Pye*, 12 Curtis, 712. It is always necessary to prove affirmatively some improper or undue influence in order to set aside contracts between parents and children, and the proceeding must be had at once. The child cannot wait until the parent's death or until the rights of other parties have intervened. 1 Perry on Trusts, 201. And the undue influence relied upon to set aside the deed must be

expressly and clearly charged in the bill. *Jackson* v. *Cleveland*, 90 Am. Dec., 277; Perry on Trusts, sec. 226. But there is no allegation or charge of fraud or undue influence in the bill, and, of course, no proof could be admitted. Influence acquired by kindness and affection is not undue influence. Influence, in order to be undue, must be such as to deprive a party of free agency. It must be proved; it cannot be presumed. *Mackall* v. *Mackall*, 135 U. S. Rep., 167.

As to inadequacy of consideration, that is not a distinct head of equity jurisdiction; that alone does not give a court jurisdiction. A deed without any consideration at all is good between the parties. Inadequacy of consideration does not vitiate a deed. If the party, knowing that the consideration is inadequate, enters into the contract with his eyes open, he cannot have relief, unless he can prove that fraud or undue influence was practiced upon him by the other party. 1 Perry on Trusts, sec. 187.

Then neither the fact that the deed was made by complainant, who had recently come of age, nor that the consideration was inadequate, rendered the deed void; and no fraud or undue influence being alleged or charged against Mrs. Higgins, the grantee, the deed must stand.

If the allegations of the bill that at the time of the execution of the deed complainant and Mrs. Higgins, the grantee, verbally agreed and understood that, notwithstanding the deed vested the legal title to the property in her, she was to hold the property in trust for the complainant, then this was an express trust, and not being in writing was null and void, because in violation of the statute of frauds (See Code 1880, § 1296; Code 1892, § 4230; *Clearman* v. *Cotton*, 66 Miss., 467; *Moore* v. *Jordan*, 65 Miss., 229; *Miazza* v. *Yerger*, 53 Miss., 135; *Jackson* v. *Cleveland*, 90 Am. Dec. & Note; 20 N. Y., 391; 46 N. Y., 610; *Sturtevant* v. *Sturtevant*, 75 Am. Dec., 371.)

The bill seems to seek to set up a resulting trust in the land

embraced in the deed. But this could not be done in this case, because the deed not only recites a pecuniary consideration, but contains full covenants of warranty. And such a deed cannot be shown to have been intended to give the grantee a resulting trust in the property. (See *Moore* v. *Jordon*, 65 Miss., 235; *Jackson* v. *Cleveland*, 90 Am. Dec., 266.) This is a bill to cancel an executed contract. This power is an extraordinary power and will never be exercised by a court of equity except in a clear case, and never for an alleged fraud unless made clearly to appear, and never for a false representation, unless its falsity is certainly proved, and unless the complainant has been injured or deceived by it. The averment upon this subject must be sustained by proof. *Atlantic Delaine Co.* v. *James*, 94 U. S. Rep., 207, 214.

Therefore, it is always necessary to prove some improper or undue influence in order to set aside contracts between parents and children. But the proceeding must be had at once; the child cannot wait until the parent's death or until the rights of other parties have intervened. 1 Perry on Trusts, sec. 201; *Godden* v. *Kimmell*, 99 U. S., 201, 210, 211, 212, and authorities there cited; *Jenkins* v. *Pye*, 12 Pet., 241, s.c. in 12 Curtis, 712-716 in the opinion; *Brown* v. *County of Buena Vista*, 95 U. S., 161; *Marsh* v. *Whitmore*, 21 Wall., 185.

In the case of *Jenkins* v. *Pye*, 12 Peters, 241, it was insisted that a deed from a daughter to a father was *prima facie* void; but the court held that, while that was the English rule, the contrary prevails in this country—that such a deed was *prima facie* good.

As to the statute of limitation of ten years, see code 1880, which applies to the case (§§ 260, 2885, 2696; same as code 1892, §§ 2763, 2730, 2731), fixing ten years as the limitation of action or suit of this description. Code of 1892, § 2731. See 1 Perry on Trusts, secs. 230, 228. Even if the conveyance of the seventeenth of April, 1886, was void for fraud, or for any other reason, still this suit was barred by the statute

of limitation of ten years. Statute of limitations to be applied in courts of equity as in courts of law. Code of 1892, § 2731; 73 Miss., 862.

But, even if the suit was not barred by the statute of limitation of ten years, as expressly provided by the code (see sections referred to above), the suit was barred because of laches or negligence of the complainant, who acquiesced in the conveyance of April 17, 1886, for nearly twelve years, and until after the death of Mrs. Higgins, the grantee; whereas the law required him to proceed promptly to set aside the deed. Perry on Trusts, sec. 201. Diligence must be used to establish a trust on ground of fraud. 1 Perry on Trusts; *Scott* v. *Freeland*, 7 Smed. & M., 409; *Hutch* v. *Kizer*, 33 Am. St. Rep., 258.

Where there has been laches in prosecuting a claim, or long acquiescence, the party should set forth the impediments to an earlier prosecution of his claim, and, if he does not, the chancellor may justly refuse to consider his case on his own showing, without inquiring whether there is a demurrer or any other formal plea of the statute of limitations contained in the answer. *Godden* v. *Kimmell*, 96 U. S. Rep., citing *Adams* v. *Adams*, 21 Wall., 185. This is a bill to cancel an executed contract.

*G. Q. Hall & Son*, for appellee.

We have here presented for consideration the purchase by a mother and guardian of her weak-minded and wayward son, at the date of his attaining his legal majority, and at a time when he was in straightened circumstances, of a splendid estate, worth two-thirds of $75,000, at the contemptible pittance of $500. Can such a transaction find support either in law, equity or morals? The bill truly states what is believed to have been the purpose of Mrs. Higgins, to wit: To protect this valuable estate against the improvidence of a weak, wayward, and profligate son. Any other view of it would necessarily present her character to this court as a heartless, inhuman mother, robbing an only child of a munificent patrimony after

having first created the environments whereby he was induced to part with his birthright for a mess of pottage. The well-considered case of *Clark* v. *Lopez*, 23 South. Rep., 932, is exactly in point and decisive of this case, and we might with all propriety and confidence rest our case upon the principles settled in that decision. There the grantor was weak-minded and needy, and the grantee acquired his property at one-fourth its value. Here the mother and guardian acquires an interest worth $50,000 for $500, or about one-half of one per cent. of its value. Mr. Pomeroy, treating of transactions between parent and child, says: "That where such transaction be had soon after the child has attained his legal majority, the court views the transaction with jealousy and anxiously interposes its protection to guard it from the exercise of parental influence. The law on this subject," he says, "is well settled. The child is presumed to be under the exercise of parental influence as long as the domination of the parent lasts. While that domination lasts it lies on the parent maintaining the gift to disprove the exercise of parental influence by showing that the child had independent advice, or in some other way. It is when the parental influence is disproved, or where that influence has ceased, that a gift from a child stands on the same footing with any other gift." 2 Pom. Eq. Jur., sec. 962 and note 3.

Further, under the head of Fiduciary Relations, the same distinguished author says: "When such relations exist, undue influence being established, any contract obtained, or other transaction accomplished by its means, is void-able, and is set aside without the necessary aid of any presumption. The single circumstance now to be considered is the existence of some fiduciary relation, some relation of confidence, subsisting between the two parties. No mental weakness, ignorance, pecuniary distress, and the like, is assumed as an element of the transaction. If any such fact be present, it is incidental—not necessary; immaterial, not essential. Nor does undue influence form a necessary part of the

circumstances, except so far as undue influence, or, rather, the ability to exercise undue influence, is implied in the very conception of a fiduciary relation, in the position of superiority occupied by one of the parties over the other, contained in the very definition of that relation; that, while equity does not deny the possibility of valid transactions between the two parties, yet, because every fiduciary relation implies a condition of superiority held by one of the parties over the other in every transaction between them, by which the superior party obtains a possible benefit, equity raises a presumption against its validity, and casts upon that party the burden of proving affirmatively its compliance with equitable requisities, and of thereby overcoming the presumption; a position where two persons stand in such relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed." And he says, further: "It is settled by an overwhelming weight of authority that the principle extends to every possible case in which a fiduciary relation exists as a fact in which there is confidence reposed on one side and the resulting superiority and influence on the other. The relation and the duties involved in it need not be legal; it may be moral, social, domestic, or merely personal." And, again, he says: "A purchase by trustee from his *cestui que trust*, even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary. It is, at least, *prima facie* voidable upon mere facts thus stated." 2 Pom. Eq. Jur., secs. 955, 956, 958.

The only remaining question which we deem necessary to

consider is the statute of limitations. The defense is insufficient, because there was no holding adverse to the right and claim of complainant; no independent possession hostile to his claim. He was in possession along with his mother, and joined her in every conveyance made of the property. Title by limitation arises only where the holding is adverse, exclusive, and hostile. Here it was not. Complainant and his mother held possession together. They occupied the old home as they did during his minority, and when sales were made his joinder was recognized as necessary, and he, in each instance, became a grantor with her in the conveyance made.

WHITFIELD, J., delivered the opinion of the court.

In so far as the bill seeks to establish a trust by parol in the face of the deed, that Mrs. Higgins was to manage the estate conveyed, etc., for her son, it is obnoxious to § 4230, code of 1892. As to the statute of limitations, it is to be said that the claim of no adverse holding relied on as an answer thereto lacks the necessary fullness and detail of statement as to the facts. Mere joinder in the deeds, the mother getting all the money, is not enough. If there are facts—as there may be—answering the statute, they must be pleaded. The purpose of the bill seems to be to first set aside the deed for fraud and undue influence, and that deed, thus put out of the way, to then establish a resultant trust arising from the investment of what would be the money of appellee in lands, the title to which was taken in the mother. And that is the true line of attack if the facts warrant it. But the averments of this bill leave all that in a mist. Coming, then, to the marrow of the case, the bill states two facts—that the deed was made by the son to the mother fifteen days after he came of age, and that the consideration was grossly inadequate; and the argument built on these two averments is that the law will presume fraud and undue influence from these two facts. But what is to become of this mere presumption of

fraud and undue influence (which is the whole case made by the. bill) when the pleader makes a summary end of the presumption by proceeding to aver that in truth and fact there was neither fraud nor imposition in the transaction ? The pleader has stated himself out of court. There may be merit in the case, but this bill does not show it.

The decree is reversed, the demurrer sustained, and leave granted appellee to amend, as he may be advised, in sixty days from the filing of the mandate in the court below.

*So ordered.*