## SAMPSON B. GOTHARD *vs.* WILLIAM FLYNN.

A mortgage is the conveyance of an estate by way of a pledge for the security of a debt, and to become void on the payment of it.

The statute of this State (Hutch. Code, 637) says, that all agreements for the sale of land or for a lease thereof, for a longer term than one year, shall be in writing, &c.

The statute (Hutch. Code, 605) further declares, that "no estate of inheritance or freehold, or for a term of more than one year, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing" sealed and delivered.

A person cannot, therefore, by a mere deposit of a title deed, incumber his estate for a longer term than one year. *Held,* that no such interest existed in T., at the date of the decree, as would authorize him to recover.

This court has heretofore declared, that as to contracts required to be in writing by the statute, it will in all cases adhere strictly to the requirements of the statute. *Held,* that the present case is within the letter of the statute.

In error from the circuit court of Monroe county; Hon. F. M. Rogers, judge.

This was a bill filed to subject a tract of land to the lien of the purchase-money. The bill presents these facts : That on the 25th day of December, 1849, the said S. B. Gothard purchased a certain tract of land from one Jesse Walden, for the sum of one hundred and sixty dollars, for which he gave his note, with the complainant as his security, and Jesse Walden gave to the said S. B. Gothard a deed for the land in fee-simple; that it was agreed between complainant and Gothard, that the deed should be delivered by the said Jesse Walden to him, the complainant, to be held by him as protection for his securityship, and that the money should be a lien upon the land.

Complainant sold a mule to Walden for sixty-five dollars, which was credited upon Gothard's note by the consent of all the parties. When the note became due and payable, the said Gothard not being able to pay it, complainant had it to do, and had to borrow the money to do so; that he was unable to get it at less than 20 per cent., and informed Gothard of the fact, who told him to get it, and gave his note to complainant. The deed

was deposited with complainant, and indorsed that it was left with the said Flynn as security collateral.

The defendant, Gothard, in his answer to the bill, admits the purchase of the land at the price mentioned; the payment of the sixty dollars by the sale of the mule; the securityship; the payment of the residue of the note given for the land; denies that he authorized complainant to borrow the money to pay this note at 20 per cent.; denies the execution of the note to complainant, mentioned in his bill; denies that the deed to the land was .left as indemnity against liability on account of securityship; says he left it with defendant to have it executed in his absence; that the stipulation on the third page of the deed was put there without his authority.

Gothard filed a cross bill to obtain from complainant a discovery of the truth of the facts contained in his answer, without alleging any matter not contained in the answer. The answer to the bill of discovery denies the charge in the cross bill.

*James Phelan*, for plaintiff in error.

Does a deposit of title deeds create an equitable mortgage which can be enforced?

In England, since the decision of *Russell* v. *Russell*, 1 Brock. 267, the principle was established; but since that time has been strongly reprobated and opposed, as creating an exception in the statute of frauds, which has promoted the very ends that statute was designed to prevent. Without a critical analysis of the decisions upon this point, in England, I beg leave to refer the court to *Coming*, *ex parte*, 9 Ves. 114, Sumn. ed., and the notes to that case; 1 Hilliard's Abridg. 345; 4 Kent, 150, 151; 2 Story's Eq. Jur. § 1020. But even in England, the facts of this case, as proved, would not have been sufficient. The case of *Russell* v. *Russell*, and those which sustain it, all decide, that "the deeds are only security for money advanced at the time of the deposit." They are based upon the actual loan of money, as upon mortgage, which the deposit is construed to be. This was no such case; the complainant was but a security on a contract with a third person; no money was advanced. The money, if borrowed at all, the proof shows, was obtained

upon a joint contract; but even if actually advanced by Flynn, was advanced subsequent to the time of the deposit. To extend the principle to such a case, would very greatly extend it beyond any point to which it has ever been sustained. To do this is against the policy of the law, and the sternest reprobation of the most distinguished English jurists.

In the United States, admonished by the evils produced by a departure from the strict letter of the statute of frauds, our courts have overruled many exceptions established in England; and the growing policy has been, to construe it with the most rigid severity. In no State has this policy been adhered to with more strictness than in Mississippi. The case of *Williams* v. *Stratton,* 10 S. & M. 418, is one bearing upon the point in question, to which I beg leave to refer the court. The subsequent case, however, of *Box* v. *Stanford,* 13 S. & M. 93, settles the whole question with regard to the decisions and policy of this State, in reference to the construction of the statute of frauds; it sweeps away the last and most reasonable exception, namely, where the execution of the writing was prevented by the fraud of the other party; and holds that no exception whatever will be sustained. That the principle of an equitable mortgage by deposit of deeds, is an exception, need not be stated.

In Kentucky, the doctrine has been rejected. *Vanmeter* v. *M'Faddin,* 8 B. Monroe, 435–437. Also in Pennsylvania, *Reckett* v. *Madeira,* 1 Rawle, 325–327; *Bowers* v. *Oyster,* 3 Penrose & Watts, 239; *Shitz* v. *Dieffanbach,* 3 Barr, 233.

There can be no such thing as the subrogation of Flynn to the rights of the vendor, Walden, as argued below. Walden had given his deed and taken personal security. Neither is the bill framed with that aspect. Walden would have to be a party to such a bill, &c., &c. I need not argue it.

*R. Davis,* for defendant in error, filed no brief in the papers.

Mr. Justice FISHER delivered the opinion of the court.

The appellee filed his bill on the chancery side of the circuit court of Monroe county, to enforce a mortgage, created by a

deposit of title deeds to a certain tract of land in said county. The appellant purchased a tract of land from one Walden, at the price of $160, and gave his note, with the appellee as security thereon, for the purchase-money. When the note became due, the appellant requested the appellee to pay it, and to retain the deed, which was then in his possession, made by Walden to the appellant, till he was reimbursed the amount of the note paid, &c. It is clearly shown, that the security paid the balance due on the note, as requested.

The court below decreed a foreclosure of the mortgage by ordering a sale of the land.

The only question which we will consider is, whether an equitable mortgage can be created in this State, by a mere deposit of title papers, without any writing evidencing the contract. Chancellor Kent says, that " a mortgage may arise in equity, out of the transactions of the parties, without any deed or express contract for that special purpose." He says, that " it is now settled in the English law, if the debtor deposit his title deeds with a creditor, it is evidence of a valid agreement for a mortgage, and amounts to an equitable mortgage, which is not within the operation of the statute of frauds." 4 Kent, 150. The leading decision in the English courts was that of *Russell* v. *Russell*, in 1783, which has since been followed by the courts, and is now the settled doctrine of that country.

But the courts of a more recent date, while they have adhered to the rule to the extent that it was laid down in *Russell* v. *Russell*, have avowed a determination not to extend it. The rule has met with strong disapprobation from Lord Eldon and other eminent English judges, because, as they say, of its breaking in upon the statute of frauds, and calling upon the court to decide, upon parol evidence, the meaning of the deposit.

The question for us to determine, is, whether we will recognize the doctrine as unadvisedly adopted by the English courts, and by them adhered to as a precedent, or whether we will profit by the warning given us by judges who have seen its practical operation, and regretted that it was ever admitted as part of the jurisprudence of that country, and refuse to

recognize the rule.   As a principle of equity, we are not aware that the rule has been disapproved.   The objection urged against it is, that it cannot be made available, without violating the statute prescribing the kind of evidence which shall be introduced to establish certain contracts.   The deposit of the deed, unexplained, proves nothing.   It may be left with the party as the agent of the vendee, as is insisted by the answer in this case.   The contract, whatever it may be, must in some mode be established.   If it may be established by parol evidence, then it must be admitted that a lien or charge may be created on land by a parol contract.   " A mortgage is the conveyance of an estate by way of pledge for the security of a debt, and to become void on payment of it."   4 Kent, 135.   If a deposit of title deeds be construed as evidence of an agreement to make a mortgage, it must be construed into a parol contract to make a conveyance, to become void on payment of the debt secured.   If the debt be not paid at maturity, then, if the contract is valid, the creditor has certainly acquired an interest in the land embraced in the deed, and can have the contract enforced in equity, by a sale of the land.   It would seem thus to be impossible to state the operation of this rule, without coming directly in conflict with the statute of frauds.   For what purpose is it, that equity decrees a foreclosure of a mortgage?   Merely to enforce the contract of the parties ?   If the mortgage was created by a writing sealed and delivered, then it is a written contract, which the court enforces; and it is by this description of contract that the debtor has parted with his land.   If it were created only by parol contract, and the court enforce it, then it is by such contract that the debtor has lost his land.   The question may again be asked, how can this be done consistently with our statute, which says, that " all agreements for the sale of land, or for a lease thereof for a longer term than one year, shall be in writing," &c.   Hutch. Code, 637.   There is also another statute bearing directly on this point.   It declares that " no estate of inheritance or freehold, or for a term of more than one year, in lands or tenements, shall be conveyed from one to another, unless the conveyance be declared by writing sealed and delivered."   Hutch. Code,

605. This law is too clear to allow construction. The greatest interest in land which can pass by parol contract from one person to another, is an estate for one year. A debtor cannot, therefore, by a deposit of his title deeds, incumber his estate for a longer term than one year. No such interest existed in the complainant at the date of the decree, and he could not, therefore, recover.

The laws on the subject of charging or conveying real estate,' are plain and simple, and the fewer departures allowed from their plain and obvious 'meaning the better for society; for when men know that the courts will only enforce those contracts which have been made according to well established rules of law, they will become more cautious in making them, and having them reduced to writing and signed by the party to be charged in all cases required by the statute. The courts, then, will be relieved from the necessity of resorting to vague and frequently contradictory evidence, to ascertain what the contract was between the parties.

This court has heretofore announced that it will, as to contracts required by the statute to be in writing, adhere to its requirements in all cases. The present case is so clearly, in our opinion, within the letter of the statute, that we feel bound not to adopt the rule as applied in England and some of the States of the Union.

Decree reversed, and bill dismissed.