## TAYLOR *et al. v.* SAYLE *et al.*

(Division A.  May 30, 1932.)

[142 So. 3.  No. 30034.]

**Stone & Stone**, of Coffeeville, for appellants.

**R. F. Kimmons**, of Water Valley, and **Kimmons & Boswell**, of Coffeeville, for appellees.

**Smith, C. J.**, delivered the opinion of the court.

The appellants exhibited an original bill against the appellees praying that they be ordered to specifically execute a contract for the purchase by them of real property belonging to the two estates. The bill alleges and the evidence discloses that the appellants offered the land for sale at public auction, at which the appellees appeared and made the highest and best bid for the land, which the auctioneer accepted. Immediately thereafter the following written contract evidencing the sale was executed:

"Memorandum of Sale.

"Received from the buyer whose name appears below Sixteen hundred fifteen & no/100 ($1,615.00) Dollars on account of his purchase of real property known as Turkey Creek Place situated in Yalobusha County, Mississippi, and containing approximately 1430 acres of land together with all improvements thereon.

"It is agreed that the purchase price is $8,079.50 and the balance of $6,463.60 is to be paid in four equal annual installments bearing interest at the rate of six per cent (6%) per annum, or in lesser time if the buyer prefers.

"Warranty Deed conveying a clear fee simple title to be delivered within thirty (30) days from the date upon which the undersigned buyer pays the said balance of the purchase price with interest as agreed.

"And it is further agreed that the above mentioned property is well known to the buyer and that he buys upon terms and conditions announced by the Auctioneer at the time of the sale.

"In witness hereof the buyer and seller have hereunto set their hand and seal this 8th day of November, 1929.

"The Estate of Joseph and Edwin Newburger.
  "R. L. Taylor
  "Fanny T. Newburger
                                "Robert J. Levy
                                "Sylvan Newburger
                "Executors
          "By Gerth Realty Company
          "D. B. Sayle & Jas. Boswell, Buyer
          "Address: Coffeeville, Miss.
"Witness:
  "Jessie Graut"

The bill alleges that the appellants intended to convey and the appellees intended to purchase the land "known as the Turkey Creek place on Turkey Creek except that part of the Newberger place on Turkey Creek lying west of Turkey Creek in the southwest quarter of section nineteen and the northwest quarter of section 30;" that the appellees thereafter declined to make any further payments for the land, although the appellants tendered to them a deed thereto. This deed described the land by governmental subdivisions, and recites that: "By this deed the parties of the first part intend to convey to the parties of the second part all of what is known as the Turkey Creek place, except ninety-seven and seventy-five hundredths acres in the southwest quarter of section nineteen and northwest quarter of section thirty lying west of Turkey Creek, conveyed to Will Reynolds."

The prayer of the bill is that the appellees be directed to accept this deed and pay for the land in accordance with their alleged contract so to do.

The evidence discloses that the advertisement for the sale did not describe the land by name or governmental subdivisions or otherwise except as being a part of "the estate of Edwin and Joseph Newberger, situated in and near Coffeeville, Mississippi." The terms on which the sale was to be made were set forth in the advertisement as follows: "One-fifth your bid and auctioneer's fee fifty cents per acre at time of sale, balance within four years."

The auctioneer testified that: "When the Turkey Creek, place was offered, I announced specifically that the land west of the creek had been sold before the auction and was not included in the Turkey Creek place. . . . I stated specifically that this originally contained one thousand four hundred ninety acres but that the part west of the creek in sections 19 and 30 had been sold to Will Reynolds and was not included. I then called for bids for the remainder of Turkey Creek property on a basis of one thousand four hundred thirty acres. As I have already said, I made this announcement when the property was first offered and repeated it during the progress of the bidding and emphasized it again when the property was knocked down as follows, 'Remember, this does not include the property beyond the creek.'" There was evidence corroborating this evidence of the auctioneer, and also evidence to the effect that no such announcement was made.

The auctioneer also testified that: "The total acreage of the Turkey Creek place was originally one thousand four hundred ninety acres, but from this there had been sold before the auction, a parcel estimated to contain sixty acres lying west of the creek and this was deducted from the acreage of one thousand four hundred ninety, leaving a net of one thousand four hundred thirty for which the buyers bid five dollars and sixty-five cents per acre, making a total of eight thousand seventy-nine dollars and fifty cents on account of which twenty per cent less a few cents was paid in cash. In addition to the cash deposit, the advertisements and terms of sale required that the purchaser pay me fifty cents per acre, auctioneer's fee in addition to the bid price. This amount was collected from the purchasers in addition to the one thousand six hundred fifteen dollars. However, let me make it very clear that this fifty cents per acre was no part of the purchase price and was no part of the down payment thereon, but was distinctly understood to be

paid to me as the auctioneer's fee and was received as such."

The evidence for the appellants is to the effect that they understood that the fifty cents per acre, the amount to cover the auctioneer's bid, was part of the purchase price of the land to be paid by them in addition to the amount bid per acre therefor. Five dollars and sixty-five cents per acre for one thousand four hundred thirty acres, the estimated acreage in the memorandum of the Turkey Creek place, amounts to eight thousand seventy-nine dollars and fifty cents, one-fifth of which is one thousand six hundred fifteen dollars and ninety cents.

The ninety-seven and seventy-five hundredth acres of land of the Turkey Creek place lying west of the creek is relatively of more value than most of the remainder of the Turkey Creek place.

The right of the appellants to sell the land as executors of the two estates is not challenged.

By a cross-bill the appellees prayed for the repayment to them of the two thousand three hundred dollars paid by them to the auctioneer at the time the memorandum of sale was executed and the money was expended by them in making necessary improvements on the land.

The court below denied the prayer of the original bill, awarded the appellees on their cross-bill the one thousand six hundred fifteen dollars, referred to in the memorandum of sale, together with the value of the improvements placed by them on the land, less the value to them of their use and occupation thereon.

The vendee in a contract for the sale of land cannot be coerced by the courts into the acceptance of, and payment for, the land when the vendor is unable or declines to convey to him a substantial portion thereof. But the appellants say that the land they agreed to convey was the Turkey Creek place, "except ninety-seven and seventy-five hundredths acres in the southwest quarter of section nineteen and the northwest quarter of section thirty lying west of Turkey Creek to Will Reynolds." The con-

tract contains no such exception, unless, as the appellants contend, it can be ingrafted thereon by parol evidence under the provision thereof that "it is further agreed that the above mentioned property is well known to the buyer and that he buys upon terms and conditions announced by the auctioneer at the time of sale."

A contract for the sale of land to be valid under the statute of frauds, section 3343, Code 1930, must describe the land with a reasonable certainty, or refer to and identify other writings by the aid of which the description can be made reasonably certain. If parol·evidence is here admissible, under the provision of the contract relied on therefor, to complete what the appellants here say is the description of the land intended to be conveyed, the contract will then rest partly in writing and partly in parol; and when such is the case the contract is void. From this one or two results follow, either (1) the appellants can obtain the specific performance of the contract by making it appear that they are willing and able to convey to the appellees the Turkey Creek place, or (2) the contract is void, and, therefore, unenforceable. It will not be necessary for us to decide either question, for, in either event, since the appellants cannot convey a portion of the land, they are not entitled to a decree for the specific performance of the contract; and the court below committed no error in so holding.

This brings us to the only other question for decision, which is: The appellees' and cross-appellants' contention that the court below should have included in the judgment awarded them the seven hundred fifteen dollars paid by them and retained by the auctioneer as his commission for making the sale. Viewed from any angle, this is clearly a part of the purchase price of part of the land, for, even under the advertisement of the sale and the auctioneer's testimony, it was money which the appellees were required by the appellant to pay before they would execute a contract for the sale.

The decree of the court below will be affirmed on direct appeal, but reversed on cross-appeal, and a decree will be rendered here adding seven hundred fifteen dollars to the amount awarded the cross-appellants and changing the dates for the execution of the decree in so far as this appeal necessitates.

So ordered.