PRICE *v.* CRAIG.

(Division A. Oct. 17, 1932.)

[143 So. 694. No. 30113.]

Colson & Guy, of Greenwood, for appellant.

44

Pollard & Hamner and **R. V. Pollard, Jr.**, all of Greenwood, for appellee.

46

**Cook, J.**, delivered the opinion of the court.

Mrs. M. E. Price, the appellant herein and complainant in the court below, filed a bill of complaint in the chancery court of Le Flore county, against Mrs. Annie Louise Craig, the sole legatee and devisee under the last will and testament of the appellant's husband, T. P. Price, deceased, seeking to cancel a quitclaim deed executed by her conveying to Mrs. Craig all her right, title, and interest in and to the estate of her deceased

husband, and to recover from the said Mrs. Craig one-half of her husband's estate. Mrs. Craig filed an answer to the bill of complaint and made it a cross-bill, praying that her title to the property involved be confirmed. The appellant answered the cross-bill and included therein a general and a special demurrer, both of which were overruled. On the final hearing of the case, a decree was entered dismissing the original bill and granting the relief prayed for in the cross-bill, and from this decree, this appeal was prosecuted.

The bill of complaint alleged that the appellant, complainant herein, is the widow of T. P. Price, deceased, and that at his death he was the owner and in possession of certain valuable real estate located in Greenwood, Le Flore county, Mississippi, occupied by him and the appellant as a homestead, and also certain personal property consisting of household goods, money in bank, etc.; that the said T. P. Price had been married previous to his marriage to the appellant, and that his first wife died intestate in the year 1929; that the said T. P. Price and his first wife during their lifetime entered into a contract, dated August 6, 1927, and duly recorded in the deed records of Le Flore county, whereby they undertook, for a consideration named therein, to contract to vest in the appellee, Mrs. Craig, at the death of the longest liver of them, the title to the real property then owned by them, and particularly described in said contract, and also the title to all other property, real and personal, whereof the longest liver of them should die seized and possessed; and that this contract was performed by T. P. Price, prior to his death, by the execution of a will in which the appellee was the sole beneficiary.

The bill further alleged that this will was placed in the hands of the appellee, but had not been probated at the time of the filing of the bill; that her husband, T. P. Price, died on the 7th day of February, 1931, and that on the 11th day of February, 1931, the appellee exhibited

the said contract and will to the appellant, and represented to her that on account of the said contract and will she had no interest whatever in any of the property of her deceased husband; that relying on this representation, she was induced to execute a deed conveying to the appellee all her right, title, and interest in and to the property of her deceased husband. The bill further alleged that this quitclaim deed was without consideration, and that the appellant was induced to execute it by reason of the representation to her that she had no right to, or interest in, any of the property of her husband; and prayed for the cancellation of the deed, and full adjudication of the rights of the parties, and full protection of her statutory rights as the widow of T. P. Price, deceased.

The contract in question, which was made an exhibit to the bill of complaint, reads in part as follows:

"This contract and agreement, made and entered into this the 6th day of August, 1927, by and between T. P. Price and Mrs. M. E. Price, his wife, parties of the first part, and W. L. Craig and Mrs. Annie Louise Craig, his wife, parties of the second part, witnesseth:

"That parties of the first part, for the considerations hereinafter mentioned, and subject to the reservations, limitations and conditions hereinafter set forth, have agreed and by these presents do agree with party of the second part, both jointly and severally, that they and each of them, by last will and testament or otherwise, will cause to be vested in Mrs. Annie Louise Craig, one of the parties of the second part, at the death of the longest liver of parties of the first part, the title to the real property now owned by parties of the first part, described as follows, to-wit: (Description omitted.)

"And also the title to all other property, real, personal and mixed, wheresoever situated, whereof, such longest liver of parties of the first part shall die seized and possessed.

"And parties of the second part, for and in consideration of the undertakings and agreements aforesaid on the part of parties of the first part and each of them to vest the title to said property in the said Mrs. Annie Louise Craig, one of the parties of the second part, do hereby agree and bind themselves, their heirs, executors and administrators, to pay; over to parties of the first part, monthly during their joint lives, and to the survivor of them, monthly during the life of such survivor, the sum of seventy-five dollars ($75) on the execution of this agreement, and seventy-five dollars on the first day of each and every month, beginning with the first day of September, 1927."

The contract further provided that, if there was a failure to pay any one of the monthly payments of seventy-five dollars by the 10th of the month in which it was due, the entire contract should be null and void at the option of the Prices, and that all sums paid to them should be retained as liquidating damages for the breach of the contract by the Craigs. The contract further provided that the Prices should have the right at any time to cancel it by repaying to the Craigs in cash, all money theretofore advanced to them, and to the survivor of them, with six per cent interest from the date of advancement. By the terms of the contract, the Craigs also bound themselves to make suitable provision for the carrying out of the contract by their heirs, executors, or administrators, in case of their death or the death of either of them, to the end that the Prices, or the survivor of them, should have prompt payment of the monthly sum of seventy-five dollars by the 10th day of each month so long as either of them lived. Other provisions of the contract in reference to the payment of taxes and insurance, and making repairs and replacements of the property involved, are not material to the decision of the questions presented by this record.

From the evidence offered at the trial of the cause, it appears that prior to August 6, 1927, T. P. Price and his first wife, Mrs. M. E. Price, who were both over the age of seventy years, were solicitous about making some provision for their support and maintenance during the remaining years of their life. They applied to certain friends with the proposition that they advance to the Prices money for their support as long as either of them lived, in consideration of their agreement that the title to all their property would be vested in the person making such advances at the death of the survivor of the Prices. Mr. and Mrs. Craig finally accepted the proposition, and the contract was executed on August 6, 1927, and was filed for record on May 14, 1929, and duly recorded in the land deed record of Le Flore county. The Craigs faithfully performed their agreement from its date until the death of T. P. Price on February 7, 1931, his first wife, Mrs. M. E. Price, having died on August 31, 1930, and at the time of the death of T. P. Price, the Craigs had, under the terms of the contract, paid to the Prices the total sum of four thousand three hundred ninety-seven dollars.

In the early part of January, 1931, the appellant, the second Mrs. M. E. Price, first met the said T. P. Price, and on January 17, 1931, she was married to him. On the 9th day of January, 1931, the said T. P. Price executed the will in question in which the appellee, Mrs. Craig, was the sole beneficiary. About four days after his marriage on January 17, 1931, the said T. P. Price was taken sick, and died on February 7, 1931. During his illness, the appellant collected and disbursed one monthly installment of seventy-five dollars that was due under the terms of the contract, and she testified that, prior to her marriage to Mr. Price, he had told her that he had such a contract with the Craigs, but did not show it to her, and that she did not know the terms or provisions of the contract.

The appellant bases her claim to one-half of the estate of her deceased husband upon the provisions of section 3562, Code 1930. Section 3561, Code of 1930, provided that, when a husband makes his last will and testament and does not make satisfactory provision therein for his wife, she may renounce the will, and thereupon she shall be entitled to such part of his estate as she would have been entitled to if he had died intestate, except that where he leaves no children or descendants of children, she shall be entitled to only one-half of the real and personal estate of her deceased husband. Section 3562, Code 1930, provides that "if the will of the husband or wife shall not make any provision for the other, the survivor of them shall have the right to share in the estate of the deceased husband or wife, as in case of unsatisfactory provision in the will of the husband or wife, for the other of them; and in such case a renunciation of the will shall not be necessary, but the rights of the survivor shall be as if the will had contained a provision that was unsatisfactory, and it had been renounced."

The exact question presented by this record does not appear to have been heretofore decided by this court; but it has been held that under some circumstances a will executed in pursuance of a contract so to do may create a vested interest in the property with which it deals, and, therefore, be irrevocable. In Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658, the bill of complaint alleged that Davis, the father of the complainants, to secure an indebtedness to one Anding, executed a deed, absolute in terms, conveying to Anding all his property; that at the time of the execution of the deed, it was orally agreed that Anding should take possession of and operate the property, and apply the net proceeds therefrom to the payment of the indebtedness to him, and that after he was fully paid, he would reconvey the entire property and its increase to the children of Davis. It was further alleged that Anding agreed that he would

prepare, and keep at all times on hand, a will in which he would devise and bequeath to the children of Davis the whole of the property on the payment of the in-debtedness intended to be secured by the deed. It was further alleged that, in compliance with this agreement, Anding executed, and for a time kept on hand, a will in which he devised and bequeathed the whole of the property to the children of Davis, but that this will was destroyed by Anding before his death, or had never been produced by his representatives, if in existence. In discussing the legal effect of these charges of the bill after stating that a valid trust was created in the property, the court said:

"The bill alleges, in effect, that it was agreed between the parties, that Anding should execute and keep on hand a will, reconveying the property to the complainants on the payment of the money intended to be secured by the deed; that this agreement was complied with by him, but that either he destroyed the will in his lifetime, or that it has never been produced by his representatives, if in existence. If these allegations be true,—as upon demurrer they must be taken to be,—there was a compliance with the agreement on his part in writing; and the destruction of the instrument by him, or its suppression by his representatives, is such a fraud as would entitle the complainants to relief, on that ground, in a court of equity. He was bound, as a matter of contract, to execute and keep a will reconveying the property; from which he and his representatives cannot claim to be absolved on the ground that it was to be done by will, which is generally revocable. For the contract was that he should perform his agreement in that manner. Upon that consideration in part and for that purpose, he had received the deed, and the agreement had the force of a contract; and the will, when executed, was, as to this property irrevocable. If not executed, he was thereby bound for the consequences of a violation of the

contract, for which he had received a valuable considera-
tion.''

It cannot be successfully contended that a contract
executed by a husband and wife, making provision for
themselves during their lifetime and the life of the sur-
vivor, upon agreement to vest the title to their property
in the other party to the contract, by will or otherwise,
at the death of the survivor of them, is against public
policy. That policy should be favorable to such a con-
tract, fairly made and faithfully performed, which guar-
antees to the aged support and the comforts of life so
long as they live.

Upon reason and authority it appears clear that, if a
man before marriage enters into a contract binding him-
self to devise his property to another for a valuable con-
sideration, paid or furnished, such contract vests ir-
revocable property rights which cannot be defeated by
subsequent marriage, at least in a case where the wife
had notice of the agreement before marriage. Lewis v.
Lewis, 104 Kan. 269, 178 Pac. 421; Burdine v. Burdine's
Ex'r, 98 Va. 515, 36 S. E. 992, 995, 81 Am. St. Rep. 741;
Deseumeur v. Rondel, 76 N. J. Eq. 394, 74 A. 703. In
Burdine v. Burdine's Ex'r, supra, the court said: ''It is
well settled that if a man, before marriage, enters into
a contract for the sale of land, upon certain terms and
conditions, and the terms and conditions are performed,
his widow is not entitled to dower in the land, although
the husband dies without making a conveyance. This is
upon the principle that the husband is regarded in equity
as a trustee for the purchaser. [Citing authorities.] And
the same rule ought to apply when the husband has
bound himself to make a devise to another for a valuable
consideration, paid or furnished, and he has failed to do
so, at least in a case where the wife had knowledge of
the agreement before marriage.''

After the execution of the contract and the acceptance
of the consideration by the Prices, the contract became

irrevocable except in the manner and upon the terms provided therein, and it vested in Mrs. Craig rights which could not be defeated by Mr. Price's subsequent marriage to one having constructive notice of the contract and its contents, and actual knowledge of the existence of the contract and of facts which, if not sufficient to give her notice of its contents, were sufficient to put her upon inquiry, which, if pursued, would have developed the true status of affairs. Upon the execution of the contract, Mrs. Craig's interest in the property was to take effect in possession only upon the death of the last survivor of the Prices, but upon its execution Mrs. Craig became the equitable owner of the property therein described, except as to the life estate of the Prices, while the Prices, except as to their life interest, became mere trustees of the legal title; and the statutory rights of a widow to share in the estate of her deceased husband do not attach to property to which the husband holds only the legal title and it in equity belongs to another.

Granting it to be true that where a property owner about to be married makes disposition of that property in fraud of the rights of the intended spouse, the courts will set aside that disposition, still a disposition of property made long prior to contemplation of marriage, and while another marriage relation exists, cannot be in fraud of the rights of a second wife.

In their brief counsel for the appellant say: "It is true that a person may by contract bind himself to will his property to a certain person or for certain purposes, but it is also equally true that if the agreement to will is performed by making a will, then the will takes the place of the contract, and no greater force or effect can be given the contract than can be given the will." This contention is not maintainable. The basis of the rights of the parties to the contract is found in the terms of the contract itself. The will was executed by Price in performance of the obligation resting upon him, under the

terms of the contract, to vest the title of the property described therein, in Mrs. Craig by will or otherwise. This obligation of the contract might have been discharged by the execution of a deed reserving to himself a life estate in the property; and the execution of the will was a performance of an obligation of the contract, and not an abrogation of the contract. The rights of the parties would not be varied or changed by the execution or failure to execute a will, since equity would perform the contract specifically if no will had been made.

It follows from the views herein expressed that the decree of the court below must be affirmed.

Affirmed.