LEWIS *et al. v.* WILLIAMS *et al.*

(Division B. Oct. 16, 1939. Suggestion of Error Overruled Nov. 27, 1939.)

[191 So. 479. No. 33797.]

Price, Price & Phillips, of Magnolia, for appellants.

704

706

Luther W. Felder, of McComb, for appellees.

**McGowen, J.**, delivered the opinion of the court.

Patrick H. Williams and a number of heirs-at-law of Tony Williams, deceased, filed their bill to cancel certain deeds held by Tom Lewis and Edna Washington to certain lands in Walthall County, alleging a constructive trust in their favor by the said holders of the deeds. The real defendants in interest, Tom Lewis and Edna Washington, in their acceptance, set up that the gravamen of the bill was to the effect that the said heirs bottomed their case upon an alleged oral promise to reconvey the lands, denied that said promise was ever made, and interposed as a defense the statute of frauds relative to the invalidity of oral agreements to convey or reconvey lands in this State.

After hearing the evidence in the case, the court below held on the deeds and oral agreements a constructive trust was created in favor of the heirs-at-law of Tony Williams, cancelled the deeds held by Lewis and Edna Washington, ordered an accounting between the parties, and appointed a master therefor. On the coming in of the report, the court entered its final decree granting the relief to the heirs-at-law and fixing the rights of the parties upon the accounting.

Appeal is prosecuted here by Lewis and Washington on the final decree cancelling their deeds, and cross-as-

signment of error was filed by the heirs-at-law on certain features of the account.

The record discloses that Tony Williams, an old negro, owned 280 acres of land, which, for our convenience, is designated as parcel No. 1 and parcel No. 2.

On April 6, 1931, the lands were sold for the taxes due and unpaid for the year 1930, and on April 6, 1933, it is agreed in the record that the title to these lands became vested in the State of Mississippi.

It further appears that prior to the time the title ripened in the State, Tony Williams had conveyed certain described parcels of land to certain designated heirs-at-law. On March 25, 1933, all of these lands were conveyed by Tony and certain of his children to Patrick H. Williams by warranty deed reciting a consideration of $296.56.

On January 25, 1934, the land commissioner and governor executed letters patent to parcel No. 1 in favor of Edna Washington, recited consideration being $156, and on the same day like letters were issued in favor of Patrick H. Williams to parcel No. 2. On January 18, 1934, Patrick H. Williams executed a quitclaim deed in favor of Tom Lewis to parcel No. 2, the recited consideration being $1 and other considerations. The bill in this case was filed December 24, 1935, but prior thereto, Tom Lewis had conveyed a part of the land which he held under Patrick Williams' deed to Arthur Williams on December 1, 1934.

Patrick Williams and the wife of Tom Lewis were son and daughter respectively of Tony Williams. Edna Washington was a granddaughter whose mother was living and confined in the state hospital for the insane.

Tony Williams died on October 2, 1935.

After Tom Lewis had acquired the deed in the spring of 1934, unlawful entry and detainer proceedings were instituted against a tenant of Patrick Williams and the court ousted that tenant of possession, and thereafter the

appellants in this case have been in continuous possession of the land.

Without the evidence of Patrick Williams, there was really no substantial evidence to contradict the recitals of the letters patent issued to him and Edna Washington, the quitclaim deed executed by him to Tom Lewis, or the warranty deed executed to him by Tony Williams and some of his children.

Patrick Williams testified further: that he was enlisted in the Navy; and that on January 13, 1934, he was on a visit to Mississippi; that he interviewed Leander Washington and his wife and they represented to him that they had the money with which to purchase the lands from the State, and agreed that they would so do; that he, in company with others, came to Jackson and saw the land commissioner, and on that date made application for the two parcels of land, 120 acres to himself and 160 acres to Edna Washington; and that the patents were issued and delivered to him; later, it developed that Leander and Edna did not have the money, and could not raise it without borrowing it; and that they then, in conjunction with Tom Lewis, applied to three white men, D. M. and C. D. Smith and Dr. A. B. Harvey, to borrow the money with which to purchase the lands from the state. Tom Lewis, Leander Washington and Patrick Williams came back to Jackson on the 17th, and there in the office of the land commissioner, Smith notified the parties, including Patrick, that he would not lend any money to Patrick Williams, but would lend it to Tom Lewis, and Leander and Edna Washington. It was then suggested that the patent could stand as issued to Patrick Williams, and that they return to Walthall County and Patrick Williams would execute a deed.

Patrick Williams further testified that on and prior to that date, Leander and Edna Washington and Tom Lewis agreed with him that if he repaid to them the money they actually paid out for the patents that they would deed the land back to him; that on the 18th he had

to leave to return to the Naval Service but returned to Walthall County in October, 1934, when he called upon the parties to reconvey to him or to the heirs of Tony Williams the lands in controversy. They both refused to do that. Patrick testified that he orally promised to pay the money for the reconveyance. He then testified that all the parties assembled in Mr. Roby's (a lawyer) office, that Roby drew the quitclaim deed, and that he, Patrick, executed it and also that a deed of trust was drawn up by Mr. Roby, dated on that date, on the lands in controversy, to secure Smith, et al., for the money furnished with which to purchase these lands from the State. That trust deed was dated on the 18th day of January, and was signed by Leander and Edna Washington and Tom Lewis to secure their note for $430.

When he returned to Walthall County in 1934, he demanded that the deeds conveying the lands back to him be executed, and the parties finally refused so to do. He testified that he demanded that their contract to reconvey the lands be prepared by Mr. Roby and signed by the parties on the day he executed the quitclaim deed to Tom Lewis. They refused so to do, but there renewed their oral promise so to do.

He specifically denied that he told Mr. Connerly, a witness introduced in his behalf, that he was going to get the land back for himself. Connerly advised him that he ought to have a contract in writing to that effect, and corroborated him to the extent that the parties refused to execute any written contract to that effect but orally promised so to do.

Several of the heirs of Tony Williams testified in the case, some in a measure corroborating Patrick Williams in that Tony Williams executed the deed to him for him to get the land back for him and his heirs. Nobody corroborated Patrick that Tony Williams or anybody was to repay him any money which he might have paid out. The record shows beyond cavil that Patrick Williams never had the money at any time from the date the deed

was executed to him by Tony Williams and others until the time when the letters patent were issued by the land commissioner to Edna Washington with which to redeem the land. He was not present when this deed was executed to him by Tony Williams, et al., and some of the parties undertook to say they had gained this information from letters, but what the letters contained or the substance of the letters was not undertaken to be shown. Patrick Williams was otherwise contradicted in many material points.

Tom Lewis, Edna Washington and her husband, Leander Washington, with others of the children of Tony Williams, strongly contradicted Patrick Williams' version of the agreement between the several parties, and denied that such oral agreement was made.

If we hold that the oral agreement, as delineated in this record, alleged to have been made by Tom Lewis, Leander and Edna Washington, constituted a constructive trust, then, we shall have practically abolished the statute of frauds, Section 3343, Code 1930: "An action shall not be brought whereby to charge a defendant or other party:. (a) . . . (b) . . . (c) Upon any contract for the sale of lands, tenements, or hereditaments, or the making of any lease thereof for a longer term than one year; . . ."

According to Patrick Williams' evidence, he had the option to repay these parties as he pleased within nine months, not the amount it cost them with interest or the cost of getting the letters patent granted, but simply the amount recited in the letters patent. This evidence simply shows that the alleged agreement was that they would reconvey the lands, provided he repaid the money by them expended within nine months. There was no trust relationship between Patrick Williams, Tom Lewis or Edna Washington. When Smith, on the day patents were said to have been delivered, declined to lend him the money with which to purchase these lands from the State, but proffered to lend the money to Lewis and the Washingtons, according to Patrick's theory of the case,

they simply promised him to reconvey the lands orally upon his compliance with the conditions he named. On and after April 6, 1933, the title to these lands, as agreed in this record, was absolutely in the State of Mississippi. Neither Tony Williams nor his heirs-at-law, nor Patrick Williams, had any title whatever to the land. The State of Mississippi having title could convey the lands, in conformity to the controlling statute, to whomsover it pleased. In no event, under the existing statute, could Patrick Williams then purchase more than 160 acres. He never paid a cent for these lands. If either Tom Lewis or Edna Washington had filed a bill against him tendering a deed and proffered same to him, and demanded specific performance in a court of equity, the statute of frauds would have been a complete defense; for nowhere, in writing, did he obligate himself to purchase the lands from these parties. If we say that this oral agreement constituted a trust, we would at once set up an exception to the statute, and throughout the history of this Court, we have emphasized that we would not engraft exceptions upon the statutes. See Beaman v. Buck, 9 Smedes & M. 207; Catlett v. Bacon, 33 Miss. 269; Hairston v. Jaudon, 42 Miss. 380; McGuire v. Stevens, 42 Miss. 724, 2 Am. Rep. 649; Gumbel v. Koon, 59 Miss. 264; Miazza v. Yerger, 53 Miss. 135; Clearman v. Cotton, 66 Miss. 467, 6 So. 156; Campbell v. Bright, 87 Miss. 443, 40 So. 3; Palmer v. Spencer, 161 Miss. 561, 137 So. 491; Pardue v. Ardis, 101 Miss. 884, 58 So. 769; Taylor v. Sayle, 163 Miss. 822, 142 So. 3, and Nelson v. Lawson, 71 Miss. 819, 15 So. 798.

An oral agreement between the parties to reduce the parol promise to reconvey to writing is void and does not take the case out of the statute. See Box v. Stanford, 13 Smedes & M. 93, 51 Am. Dec. 142; Berry v. Bullock, 81 Miss. 463, 33 So. 410; and Howie v. Swaggard, 142 Miss. 409, 107 So. 556. Neither can an oral contract to sell or reconvey, or for the sale of land, be specifically enforced in a court of equity, even though it be partially

performed. See Milam v. Paxton, 160 Miss. 562, 134 So. 171, and authorities there cited.

An examination of these authorities demonstrates that this court has consistently held that exception such as declaring an oral agreement such as was made in this case to be a constructive trust, or that it was a fraud upon the promisee, be recognized as exceptions to the statute.

This record does not disclose any effort on the part of either Lewis or the Washingtons to induce Patrick Williams to do anything. The fact is that on the day these letters patent were issued and the quitclaim deed from Patrick Williams was made to Tom Lewis, he had no more interest in the land so far as this record discloses than did Lewis, whose wife was an heir of Tony Williams. In fact, so far as the law existing at that time was concerned, in conformity with it, the land commissioner might have conveyed these lands to any two parties, not prohibited by law, who might apply to him in proper form. So far as the execution of these patents was concerned, Patrick Williams took charge of the situation and was the leading spirit in the issuance of the patents. He did not redeem the land within the time within which an owner was authorized so to do. He never invested a dollar in the lands, and his own evidence shows that he clearly reserved the right to repurchase or not as he saw fit.

The quitclaim deed executed by Patrick Williams to Tom Lewis could not in any view of the case be held to be a mortgage or security for the money because Tom Lewis went into possession by the mandate of the unlawful entry and detainer court, and Patrick Williams was therefore not in a position of a mortgagor in possession. See Section 3351. Also see George Tanous et al. v. Garfield White and Jim Jenkins, Miss.; 191 So. 278, decided October 9, 1939, by Division A, for a very full discussion of this matter. A constructive trust was established in the case of Ragsdale v. Ragsdale, 68 Miss. 92, 8 So. 315,

11 L. R. A. 316, 24 Am. St. Rep. 256, and like cases, but there is no evidence in this record that Tom Lewis or Edna Washington did anything at any time prior to the date of the issuance of the letters patent to prevent Patrick Williams from purchasing from the State these lands, unless it be said that Edna Washington had made an application prior to January 13, 1939, to purchase these lands.

The only fraud upon which the appellees could possibly rely in this case is the oral statement that they would reconvey the lands, is evidence of a promise to reconvey the lands, and if that could be said to be fraud such as would set aside the statute of frauds, then, that statute would no longer serve any purposes in this State. Where fraud is relied upon, it must not be based solely on the false promise. We have called attention to the Ragsdale case because it is the strongest that could be cited for for appellees' contention, and the facts of that case show clearly that they have no application to the alleged oral promise made in this case.

It might be argued that the appellants here knew that Patrick Williams was under an agreement to reconvey to Tony Williams or his heirs. Assuming that they knew this, they also knew that he had not complied with his agreement to redeem the land, or to purchase it; and they knew that he procured the letters patent issued in his name with their money which they had borrowed from strangers, which had been repaid at the time of the trial of this case. Patrick Williams knew they were borrowing this money, secured by deed of trust on these lands, and does not even pretend that he made known to those mortgagees his secret claim or equity in the land. To put it plain, Tony Williams, his heirs, and Patrick Williams had no legal or equitable claim to the lands on the date the letters patent were issued, as delineated in the statement of the facts of the case.

The conclusion we have reached disposes of the cross-appeal on the accounting.

Reversed and decree here for appellants.