## JOHNSTON *v.* TOMME.

(In Banc.  Jan. 28, 1946.  Suggestion of Error Overruled March 11, 1946.)

[24 So. (2d) 730.  No. 35888.]

Holmes & Bowdre, of Hernando, for appellant.

Gerald Chatham, of Hernando, for appellant.

342

**Lester G. Fant,** of Holly Springs, for appellee.

Argued orally by **F. C. Holmes** and **Gerald Chatham,** for appellant, and by **Lester G. Fant,** for appellee.

**Alexander, J.,** delivered the opinion of the court.

This is an appeal from a decree overruling a general and two special demurrers to a bill in equity and is allowed to settle the controlling principles in the case. These demurrers remand us to the allegations of the bill for the following assumed facts.

Thomas S. Johnston, who was a paralytic and physically unable to take care of himself, made an oral agreement with the appellee that if she would take him into her home and assume the care of him, seeing that he did

not suffer for the lack of that attention which was essential, he would make his will in her favor leaving her his entire estate. Mr. Johnston's crippled condition required minute and constant attention.

This agreement was performed by the actual execution of the will in favor of appellee who took him into her home and cared for him constantly for a period of two and one-half years until his death. During this period appellee was required to be with him continually as he could not be left alone and needed attention at all times.

Subsequent to the execution of the will as agreed upon, the testator added a codicil changing its terms so that appellee was given only a life estate, with remainder to appellant. At a still later date, about three months before his death, he executed a new will leaving all his property to appellant. The appellant is a nephew of the testator who was living in the home of former in Florida at the time the aforesaid agreement was entered into. Because of the displeasure of the wife of appellant at the testator's continued presence in her home in his helpless condition, the testator was moved to make the contract with Mrs. Tomme, whose home was in Mississippi. Both wills were, if not prepared by solicitors for appellant, witnessed by them. It is alleged that the alteration of the first will, and the execution of the second, constituted fraud by the testator against appellee.

The second will was probated. The bill, filed by Mrs. Tomme, seeks cancellation of the second will, the establishment of the original testament, or in the alternative for possession of the entire estate. Appellee probated a claim for personal services on a quantum meruit basis in the sum of $9,870.

In view of the right of the complainant to establish at least her claim quantum meruit, the chancellor was right in overruling the general demurrer. Ellis v. Berry, 145 Miss. 652, 110 So. 211; First Nat. Bank v. Owen, 177 Miss. 339, 171 So. 4. The special demurrers set up the statute of frauds as a bar to the action as an attempt to assert oral

conveyance of the personal property and the real property respectively.

The controlling principle to be decided is this: Is a will, executed in compliance with an oral agreement to execute it, irrevocable by the testator who had received the services and care agreed upon as a consideration therefor?

The discussion of course assumes the existence of the facts set out in the bill and above summarized, and we shall not forecast the nature of proof essential to invoke and meet the principles to be herein declared.

An offer to enforce an oral contract, whose result is to transfer lands, compels careful pause while adverse first impressions are examined and the efficacy of the statute of frauds is anlyzed. As in Ragsdale v. Ragsdale, 68 Miss. 92, 8 So. 315, 11 L. R. A. 316, 24 Am. St. Rep. 256, we readily disavow any inclination to engraft exceptions upon the statute or to endorse any trust arising from the mere breach of an oral contract. Yet we must make forthright acknowledgment of the power and duty of equity to assay such agreements for traces of fraud discoverable in the conduct of the parties. This principle is given prominence also in Horne v. Higgins, 76 Miss. 813, 25 So. 489, and in Lewis v. Williams, 186 Miss. 701, 191 So. 479. In the former case an oral agreement by a grantee in a deed to hold property in trust for the grantor was held to be within the statute. While a demurrer was sustained on such ground, the cause was remanded to allow a showing of fraud. In the latter case an oral agreement to reconvey lands was held to be unenforceable specifically, but the Court pointed out two exceptions to the rule; (1) where the oral declaration amounts to a constructive trust, and (2) where there is fraud upon the promisee. That the equities arise not out of the oral contract, but are found in the conduct of the parties, is shown in 49 Am. Jur., Statute of Frauds, Sec. 524, p. 823; Id., Sec. 526, p. 825. See also the later case, Schweizer v. Patton (Mo. Sup.), 116 S. W. (2d) 39.

Our attention is directed at the outset to Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658. Davis was heavily indebted to Anding. For the purpose of securing payment of the debt, Davis executed a deed absolute on its face to Anding, including therein real and personal property. It was agreed that Anding would take possession of the property, and from the proceeds of its operation pay the expenses thereof and apply any profits to the indebtedness. When fully paid, the property was to be conveyed to the children of Davis. This agreement was oral. It was further so agreed that Anding would execute and keep on hand a will leaving the property to these children, but later destroyed it. The debt to Anding was, through his operations, fully paid. The bill was filed by the heirs of Davis against the heirs of Anding who were holding the deed from Davis. The court responded to the contentions that an oral trust could not be enforced, that the deed could not be shown to be a mortgage, and that the action was barred by limitations. With these we have no present concern save to mention that our original statute of frauds, then in force but not so when the agreement was made, was discussed.

Upon the effect of the agreement to make and keep a will, the Court stated: "But, independently of these considerations, these objections are obviated by the facts stated in this bill. The bill alleges, in effect, that it was agreed between the parties, that Anding should execute and keep on hand a will, reconveying the property to the complainants on the payment of the money intended to be secured by the deed; that this agreement was complied with by him, but that either he destroyed the will in his lifetime, or that it has never been produced by his representatives, if in existence. If these allegations be true,—as upon demurrer they must be taken to be,— there was a compliance with the agreement on his part in writing; and the destruction of the instrument by him, or its suppression by his representatives, is such a fraud as would entitle the complainants to relief, on that

ground, in a court of equity. He was bound, as a matter of contract to execute and keep a will reconveying the property; from which he and his representatives cannot claim to be absolved on the ground that it was to be done by will, which is generally revocable. For the contract was that he should perform his agreement in that manner. Upon that consideration in part and for that purpose, he had received the deed, and the agreement had the force of a contract; and the will, when executed, was, as to his property irrevocable."

The agreement in the case before us was not an oral contract to convey lands. It was an agreement to make a will. It is not enough to say that the will was but a means whereby land was to be transferred. That is an incident,—important enough it is true,—of the thing agreed to be done. The testator did what he had agreed to do and all that he could or need do. The oral agreement was therefore completely executed, on Johnston's part through the written will, and by Mrs. Tomme by her performance of her agreement. Had the agreement been that Johnston would write a book or musical composition, the latter once done would constitute compliance. As stated, the fact that the writing here agreed upon had incidents of a direct transfer of property as contrasted with the uncertainty of profits from a literary composition, does not militate against the simple truth that the testator did what he was bound to do. The will, when written in conformity and compliance with the agreement, was a consideration which belonged to the appellee. The testator had no right to revoke it, and its attempted revocation, if deliberately made, constituted a fraud upon her. It would be fatuous to hold, as was done in Eggers v. Anderson, 63 N. J. Eq. 264, 49 A. 578, 55 L. R. A. 570, that the testator complied with his agreement by the mere execution of the testamentary document, and that thereafter he was free to destroy it. The error of this view is shown in Bruce v. Moon, 57 S. C. 60, 35 S. E. 415.

Nelson v. Lawson, 71 Miss. 819, 15 So. 798, cited by appellant, involved an oral conveyance of growing timber. It was held that such contract, to the extent that it was not executed by actual removal, was unenforceable. It is in point only insofar as it recognizes a distinction between an executory and a executed agreement. The same distinguished justice who wrote the opinion in this case also spoke for the Court in the Ragsdale case, supra, wherein it was shown that the statute of frauds could not be interposed to shield against fraud. In the latter case the devisee named in a will undertook to carry out the intention and purpose of the testator, his father, to procure due execution of a codicil to take care of another son to the extent of one-half the estate. The undertaking of the original devisee was oral, yet he was held as trustee for the proposed second devisee since his failure to procure due execution of the codicil constituted a fraud. The case involves an interception of an intended devise as did Moore v. Crump, 84 Miss. 612, 37 So. 109; and Benbrook v. Yancy, 96 Miss. 536, 51 So. 461. It is difficult, however, to distinguish in principle the thwarting of a testamentary purpose by a devisee and such fraud by the testator himself.

Ellis v. Berry, supra, involved an oral agreement to leave promisee a sum more than sufficient to compensate him for services rendered. The suit was not upon the agreement but upon probated claims, quantum meruit. The Court, although upholding such agreements as consistent with good morals and public policy, took occasion to state that the rule that there may be no specific performance of an oral contract to devise "seems to be generally recognized as being correct." [145 Miss. 652, 110 So. 213.] This expression, unquestionably stated obiter, does not apply to the facts in the instant case.

Price v. Craig, 164 Miss. 42, 143 So. 694, 697, dealt with an agreement and facts similar to the case before us. The contract for services, however, was in writing. Yet, this was an incidental circumstance as shown by the

reasoning in the opinion. The Court, in replying to the contention of appellant that the will, executed in compliance with the contract, took the place of the contract, and no greater force or effect could be given the contract than can be given the will, said: "This contention is not maintainable. The basis of the rights of the parties to the contract is found in the terms of the contract itself. The will was executed by Price in performance of the obligation resting upon him, under the terms of the contract, to vest the title of the property described therein, in Mrs. Craig by will or otherwise. . . . the execution of the will was a performance . . . of the contract, and not an abrogation of the contract." Counsel conceded, and the Court held, as it had theretofore, that such a contract was not of itself contrary to morals or public policy. Anding v. Davis, supra, was cited at length and approved. In Price v. Craig, the agreement to make a will was executed. The Court is again quoted: "Upon reason and authority it appears clear that, if a man before marriage enters into contract binding himself to devise his property to another for a valuable consideration, paid or furnished, such contract vests irrevocable property rights which cannot be defeated." It is true that the defeasance there contemplated was by the subsequent marriage of the testator. Yet it is the irrevocability of the executed agreement which is stressed and not the nature of the attack asserted against it, for the Court said further, "After the execution of the contract and the acceptance of the consideration by the Prices, the contract became irrevocable except in the manner and upon the terms provided therein, and it vested in Mrs. Craig rights which could not be defeated" by Mrs. Price's subsequent marriage.

The foregoing cases show that an oral agreement, when performed by the execution of a will, is thereby executed. The agreement is not being enforced but its execution recognized and upheld. The bill seeks not a specific performance of the oral contract, for the testator had

already. complied therewith by a writing duly executed. As stated in the Anding case, "after its execution, as agreed on, he had no right to destroy it, without a violation of his agreement," and it was held that the testator "was guilty of a fraud upon the agreement, either in failing to perform his contract to execute and keep on hand a will reconveying the property; or the will was executed according to the agreement and has since been destroyed or suppressed by his representatives; and this clearly presents a case which in equity entitled the complainants to the benefit of the agreement, as though it had been carried out in due form."

We do not adjudge what effect the agreement here would have in event the will has been destroyed or cannot be produced. Since the statute of frauds is held not here applicable, we need not respond to the contention that the oral contract was not to be performed within fifteen months. Code 1942, Sec. 264(d). See Jackson v. Illinois Cent. R. Company, 76 Miss. 607, 24 So. 874; Ellis v. Berry, supra.

Stephens v. Duckworth, 188 Miss. 626, 196 So. 219, 221, is not hostile to these views. Suit was upon an unliquidated claim against an estate for personal services rendered the decedent. The Court took occasion to state "Of course, the oral contract to convey to her the home place cannot be enforced under the laws of this state", yet the fair value of the services was allowed. There was no compliance with the oral agreement to convey, and a suit, other than upon quantum meruit, would have to rest solely upon the oral contract, which could not be allowed.

The principles set out in Anding v. Davis, supra, have not been judicially disturbed. That case was cited and followed in principle in Klein v. McNamara, 54 Miss. 90, and Tigner v. McGehee, 60 Miss. 185. In ruling out the statute of frauds as a bar to the action, the Court in the former case stated: "The conversion of the deed without defeasance, by resort to extrinsic evidence, encountered two obstacles. One was, the rule that parol testimony

cannot contradict or vary the written contract; the other was the Statute of Frauds. Very early in the history of the Chancery Court both difficulties were surmounted by placing the right upon the ground of fraud, one of the primary sources of equity jurisdiction.'' They find additional support in 49 Am. Jur., Statute of Frauds, Sec. 330, where it is stated that the instrument possesses a dual character; it is partly contractual and partly testamentary.

It is misleading to designate the action as one for the specific performance of an oral contract. Yet it has been designated as ''relief in the nature of specific performance.'' See annotation in 3 A. L. R. 172 and the extensive annotation to Andrews v. Aikens, 44 Idaho 797, 260 P. 423, 69 A. L. R. 8, 26. In the voluminous citation of authorities here, and in the supplemental annotation to Holsz v. Stephen, 362 Ill. 527, 200 N. E. 601, 106 A. L. R. 737, 742, it is shown that the statute of frauds is mentioned by the courts in this connection merely to disavow its applicability to those cases where its invocation would operate to support the interposition of the promisor's own fraud. It is needless to transplant here the host of authorities cited in the foregoing annotation which support the holding in Anding v. Davis. See also 49 Am. Jur., Statute of Frauds, Sec. 518.

We are of the opinion, therefore, that the complainant is entitled to support her allegations with proof, and that the learned chancellor was correct in overruling the general and special demurrers. We do not lay down a general rule allowing the establishment of a trust by oral agreement, nor do we design a model for all cases. We do say that where a testator executes a will in compliance with an oral agreement with the devisee that the latter will render unique and necessary personal services to him involving a substantial change in the status and manner of living of the promisee, and such services have been performed, so that a revocation of the will amounts to fraud upon the latter, rendering it impossible or imprac-

ticable to restore him to the situation in which he was prior to the contract, equity will hold such will to be irrevocable and the rights thereunder may be established.

Our conclusions affirming the action of the chancellor in overruling the demurrers, constitutes a warrant to the complainant to undertake to bring her case within the principles herein announced.

Affirmed and remanded.

**L. A. Smith, Sr., J.,** took no part.

DISSENTING OPINION.

**Roberds, J.,** delivered a dissenting opinion.

The majority holding means, under the pleadings in this case, that an oral agreement to execute a will and leave to the promisee one's estate, real and personal, is binding and enforcible if the promisee performs the agreed services and the will is executed by the promisor, even though such will makes no reference whatever to the oral agreement and is destroyed or revoked by the testator and the property has never been delivered to or taken possession of by the promisee. With all due deference I cannot agree with my brethren in that pronouncement. This court has never held that before. Such an oral promise is an agreement to convey land and as such is within the meaning of our statute of frauds, Section 264, Code 1942, prohibiting the enforcement of a contract for the sale of lands unless ". . . the promise or agreement upon which such action may be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith, or some person by him or her thereunto lawfully authorized in writing" 49 Am. Jur., p. 539, Sec. 215. This Court has uniformly held that an oral agreement to convey land is not enforcible. Campbell v. Bright, 87 Miss. 443, 40 So. 3; Palmer v. Spencer, 161 Miss. 561, 137 So. 491, and many other cases which might be cited. This includes

such agreement to convey standing timber. Harrell v. Miller, 35 Miss. 700, 72 Am. Dec. 154; Nelson v. Lawson, 71 Miss. 819, 15 So. 798; Singletary v. Ginn, 153 Miss. 700, 121 So. 820.

This Court has construed the statute strictly and refused to engraft exceptions thereon. Gothard v. Flynn, 25 Miss. 58; Catlett v. Bacon, 33 Miss. 269; Hairston v. Jaudon, 42 Miss. 380; McGuire v. Stevens, 42 Miss. 724, 2 Am. Rep. 649; Tanner v. Walsh., 184 Miss. 147, 183 So. 278.

The memorandum in writing, to take the case out of the statute, must contain the essential terms of the contract. Waul v. Kirkman, 27 Miss. 823; McGuire v. Stevens, 42 Miss. 724, 2 Am. Rep. 649; Kervin v. Biglane, 144 Miss. 666, 110 So. 232; Gulfport C. O., F. & Mfg. Co. v. Renau, 94 Miss. 904, 48 So. 292, 136 Am. St. Rep. 607; Taylor v. Sayle, 163 Miss. 822, 142 So. 3; Nickerson v. Fithian Land Co., 118 Miss. 722, 80 So. 1; Paine v. Mikell, 187 Miss. 125, 192 So. 15.

Part performance will not take a parol agreement to sell land out of the statute. Howie v. Swaggard, 142 Miss. 409, 107 So. 556; Milam v. Paxton, 160 Miss. 562, 134 So. 171.

This Court is committed to the proposition that such an agreement is unenforcible if the will has not been executed. Wells et al. v. Brooks, Administrator, 199 Miss. 327, 24 So. (2d) 533. But it is said the mere execution of the will takes the case out of the statute, although it is revoked by the testator and makes no reference whatever to the agreement, and neither the will nor the property was ever delivered to, or in the possession of, the promisee. I don't think this Court has held that. Price v. Craig, 164 Miss. 42, 143 So. 694, involved a written agreement, which, of course, is a different question. The language of the Court in Anding v. Davis, 38 Miss. 574, 77 Am. Dec. 658, is broad enough to so hold but the case does not support the language. The promisor there did actually set up a trust for some of the beneficiaries as he

had agreed and the main question was whether a deed absolute on its face could be shown by parol to be a mortgage and mere security for a debt, which can be done. Tanous et al. v. White, 186 Miss. 556, 191 So. 278. Too, in the Anding case, the mortgagee was in the actual control and management of the property using the income therefrom with which to pay the debt. In that case, as here, the effort was to fasten upon the property a trust and thereby have it delivered to the promisee, and the court expressly called attention to the fact that the case arose before the enactment of Section 269, Code 1942, requiring declarations of trusts to be in writing and duly recorded to be valid, and this Court has held generally that parol agreements to create a trust are not enforcible. Metcalf v. Brandon, 58 Miss. 841; Horne v. Higgins, 76 Miss. 813, 25 So. 489; Lewis v. Williams, 186 Miss. 701, 191 So. 479. Some of the cases from other jurisdictions appear to support the majority opinion, as shown in annotations in 69 A. L. R. 8, 26, and 106 A. L. R. 737, but upon examination it will be found that most of these either construe statutes differing from ours in material respects, or the courts in that jurisdiction enforce such agreement where there has been full or part performance, or engraft exceptions onto the statute, or the property has been delivered the promisee or his position is such that equity and justice cannot be done him without enforcement of the agreement. The entire foundation drops out of this case when the will fails to say it is made pursuant to the oral agreement and fails to set out the essentials of such agreement. There is no memorandum in writing of any kind evidencing the oral agreement. The entire matter rests on parol. The original agreement is in parol; the fact of the execution of the will and its contents must be shown, as a rule, by parol. The fact that it was executed pursuant to the oral agreement, if such be the case, must be shown by parol.

Refusal to enforce such agreement works no injustice to the claimant. He can recover for the fair and reason-

able value of his services.   Ellis v. Berry, 145 Miss. 652, 110 So. 211; Stephens v. Duckworth, 188 Miss. 626, 196 So. 219.   The case at bar illustrates that.   Mrs. Tomme claims she cared for Mr. Johnson two and a half years. It is admitted he paid her $45 per month for two years and three months and $50 per month for the last three months.   She has filed a claim against the estate for $9,870 in addition to what she has been paid in case she is not awarded his estate.   The Court can fix and allow her the reasonable value of her services.   She will have suffered no injury.   But the dangers of the rule are great. This case illustrates that.   It appears the value of this estate is around $25,000.   Mrs. Tomme claims it all.   If she should succeed she will receive the total value of the estate plus the money Mr. Johnston has already paid her. This is in no way a prejudgment of the case at bar.   She may be entitled to it under the announced rule.   It is an illustration.   Other cases will likely arise where the inequity in value of the services rendered to that of the property received will be a hundred fold greater than this. Again the alleged promisor is gone.   He cannot deny the contract nor explain the reasons for his execution or revocation of his will.   His estate, though worth many times the value of the services rendered, may be entirely taken from his heirs and dependents, leaving them penniless. It takes away the right of the owner of property to dispose of his property by will.   It would be better, in my opinion, to trod the beaten paths in this respect than to wander into brambles and underbrush without a compass. The rule, like Banquo's Ghost, is going to return often to sorely plague us.